Francis E. JONES, Jr.,

v.

The UNITED STATES.

No. 369–80C.

United States Claims Court.

Nov. 6, 1984.

Paul A. Kiefer, Washington, D.C., for plaintiff.

Sara V. Greenberg, Washington, D.C., with whom was Acting Asst. Atty. Gen. Richard K. Willard, Washington, D.C., for defendant.

## ON DEFENDANT'S MOTION FOR RECONSIDERATION

### OPINION

SETO, Judge.

This case comes before the court on defendant's motion for reconsideration, and plaintiff's response thereto, for reconsideration of this court's earlier order denying defendant's and plaintiff's cross-motions for summary judgment.[1] In reaching its earlier decision, the court considered the issues of whether an Air Force Reserve Officer Screening Board ("ROSB") included an "appropriate number" of reserve members as required by 10 U.S.C. § 266(a), and whether plaintiff's claim was barred by laches. The court found that facts material to the proper disposition of both issues remained unresolved and denied the parties' cross-motions. Upon reconsideration, and for the reasons stated below, defendant's motion for summary judgment is granted and plaintiff's complaint is to be dismissed.

The undisputed material facts of this case establish that plaintiff, a Captain in the Air Force Reserve, was recommended for involuntary release from active duty by an ROSB convened on October 15, 1973, and was so released on July 24, 1974. On October 30, 1974, plaintiff reenlisted in the Air Force and became retirement eligible on February 1, 1983. Plaintiff pursued no administrative remedy following his separation and filed this action on July 18, 1980, shortly after reading a news article regarding a case involving similar facts then pending in the Court of Claims (*Stewart v. United States*, 222 Ct.Cl. 42, 611 F.2d 1356 (1979)).

### DISCUSSION

In its earlier order, this court identified the two elements of laches as (1) unreasonable delay in filing suit, and (2) resulting prejudice to defendant. *See Brundage v. United States*, 205 Ct.Cl. 502, 504 F.2d 1382 (1974), *cert. denied*, 421 U.S. 998, 95

---

1. *Jones v. United States*, 3 Cl.Ct. 417 (1983)

S.Ct. 2395, 44 L.Ed.2d 665 (1975). In reviewing the first element of this defense, the court found that there remained the issue of whether a reasonable person in plaintiff's position should have inquired about the ROSB's composition and declined to rule on the issue of unreasonable delay. In light of the evidence supplied by the parties, as well as recent decisions of the Claims Court and the Court of Appeals for the Federal Circuit, and finding that no facts material to the proper disposition of the issue of laches exist, the court will address the applicability of the doctrine of laches to the instant case.

*Unreasonable Delay*

■■ To avoid laches, a litigant must pursue his claim with diligence from the date it accrues. *See Brundage*, 205 Ct.Cl. at 507, 504 F.2d 1382. Because plaintiff's claim accrued at the time of his separation on July 24, 1974, it is from this date that plaintiff's actions are scrutinized. *Id.*

As an excuse for his delay in filing suit, plaintiff argues that all the facts necessary to determine his claim were not known to him until he read a news article concerning *Stewart v. United States*. It was at that time, he claims, that he learned of a possible cause of action against the United States involving the composition of the ROSB which recommended his involuntary release from active duty. In essence, plaintiff contends that his duty to diligently pursue his claim arises only after it is possible for him to conclude, from the facts *known* to him, that a claim exists. Defendant rejoins that diligence must be evidenced from the time plaintiff's claim accrues, not from the time he learns that a claim may exist. Basically, defendant argues that plaintiff is charged with constructive knowledge of the law and has a *duty to inquire* about the facts necessary to determine whether a cause of action exists.

■■ Essentially, plaintiff seeks to justify his delay in instituting suit by claiming ignorance of the law; ignorance which was

cured only upon reading a news article concerning a similar case then pending in the Court of Claims. Plaintiff's position, however, is untenable. The Court of Claims rejected a similar argument in *Ide v. United States*, 25 Ct.Cl. 401 (1890). In *Ide*, plaintiff attempted to justify his lack of diligence in pursuing his claim by alleging he was ignorant of the controlling law until the Supreme Court's decision of a case similar to his own some years earlier. In dismissing plaintiff's claim, the court noted that the Supreme Court did not make the law, but merely "threw judicial light upon what had been the law for more than eighty years, as everybody was bound to know." 25 Ct.Cl. at 408. Where laches is raised, knowledge of the law is imputed to all plaintiffs. Consequently, professed ignorance of one's legal rights does not justify delay in filing suit. *See Harris v. Lykes Bros. Steamship Co., Inc.*, 375 F.Supp. 1155, 1158 (E.D.Tex.1974), *cited with approval in Weber v. United States*, 213 Ct.Cl. 720, 722, 553 F.2d 105 (1977).

█ Similarly, the professed ignorance of the factual basis of a cause of action does not justify delay in filing suit. Based on the information known to him at the time of his release from active duty, i.e., the adverse decision of the ROSB, and constructive knowledge of the contents of 10 U.S.C. § 226(a), plaintiff acquired a duty to seek facts to determine if the ROSB in question complied with the appropriate regulations.[2] As the Claims Court stated in *Foster v. United States*, 3 Cl.Ct. 440, 444 (1983), *aff'd*, 733 F.2d 88 (Fed.Cir.1984):

**2.** Plaintiff does not claim, nor is there evidence to suggest, that the Air Force was under a duty to disclose information regarding composition of the ROSB. Indeed, with regard to selection boards, the court in *Foster* has noted that there is no such duty. 3 Cl.Ct. at 444, *citing Gilmore v. United States*, 228 Ct.Cl. 829, 832 (1981)

**3.** Plaintiff claims that the information he needed regarding the *composition* of the ROSB would not have been released directly to plaintiff had it been requested in 1974. We find this argument to be unpersuasive. There is no evidence that plaintiff, either individually or through his counsel, would have been denied

Plaintiffs were bound to know that the statute in these cases required representation of an "appropriate number" of reservists and were bound to take action to ascertain whether the representation was appropriate.

Plaintiff was under a duty to diligently pursue his claim once it accrued in July of 1974 by discharging his affirmative duty to inquire and acting on the facts discovered.[3] There is no evidence of such diligence and no plausible excuse for plaintiff's delay in filing suit.[4]

█ Finally, plaintiff claims that the length of his delay—nearly six years—is not unreasonable, and attempts to distinguish *Foster* on the basis that plaintiff's claims therein were filed after the expiration of the six-year statute of limitations period. Although it is true that the statute of limitations bears on the applicability of laches, "[i]mplicit in the statute of limitations period is a shorter period in which laches may apply..." *Deering v. United States*, 223 Ct.Cl. 342, 348, 620 F.2d 242, 245 (1980). Indeed, this court has barred plaintiffs from pursuing their claims where their delay was significantly less than six years.[5] Because plaintiff has established no cognizable extenuating circumstances for his nearly six-year delay in filing suit, this court finds unreasonable and inexcusable delay in the initiation of this action.

### Prejudice to Defendant

Before laches is found to apply, defendant must establish that it has been prejudiced by plaintiff's unreasonable delay.

access to that information or that the Air Force would have interfered with an attempt to acquire information under the Freedom of Information Act. Plaintiff cannot now be heard to claim the inadequacy of procedures never pursued as justification for his lack of diligence.

**4.** Moreover, it is not alleged that defendant's actions contributed to plaintiff's delay in bringing suit. *See Gruca v. United States Steel Corp.*, 495 F.2d 1252, 1256 (3rd Cir.1974).

**5.** *See* authorities, with parenthetical delay periods, cited in *Alpert v. United States*, 161 Ct.Cl. 810, 821 (1963).

However, "the longer the delay by a plaintiff in filing suit, the less need there is to search for specific prejudice and the greater the shift to plaintiff of demonstrating lack of prejudice." *Deering*, 223 Ct.Cl. at 350, 620 F.2d at 246. As a result of plaintiff's unreasonable delay, the requisite prejudice defendant must establish is minimal.

In his original complaint, plaintiff sought full back pay as a Captain from the date of his release in 1974, correction of his records, and retroactive adjustment of his retirement pay. During oral argument on September 19, 1984, however, counsel for plaintiff moved for leave to amend his complaint to limit the amount of back pay sought to that accruing within 6 months of his discharge.[6] Plaintiff contends that such an amendment would eliminate any basis for a showing of prejudice.

The facts of the instant case, as originally pled, support a finding of prejudice. Defendant argues that prejudice is established because, as a result of the delay, the government will be required to pay a significant sum in back pay for services never required or performed if plaintiff prevails. Plaintiff rejoins that defendant is not prejudiced because the government received the services of an officer for the pay of an enlisted man during the period in question. This argument, however, was specifically rejected in *Deering*. The court in *Deering* noted that plaintiff's delay in bringing suit increased the government's potential liability to pay for unrendered services it did not need or want. 223 Ct.Cl. at 349–350, 620 F.2d at 245–246. It is this multiplication of damages, resulting from plaintiff's lengthy delay in the instant case, which this court finds to be prejudicial.

In affirming the Claims Court's decision that the potential payment of a significant amount of back pay is sufficient to establish prejudice, the Court of Appeals for the Federal Circuit stated:

> The Claims Court also found that the government had met its affirmative burden of showing that the long delays in the filing of these suits was inexcusable

and prejudicial in that if appellants prevailed, the government would be required to pay them sums approximating $100,000 each in back pay. *Foster*, 733 F.2d at 90.

We find this ruling to be controlling and, accordingly, find that, under the original pleadings, defendant has made the requisite showing of prejudice.

■ Plaintiff now seeks to avoid the application of laches, however, by moving to amend his complaint and limit his request for back pay, thus allegedly eliminating the basis for a finding of prejudice. This calculated attempt to vitiate the doctrine of laches will not succeed. Before granting leave to amend the complaint, the court must be satisfied that to do so would be in the interest of justice. RUSCC 15(a). We remain unconvinced that justice requires us to permit plaintiff to amend his complaint. Indeed, justice would be ill-served were we to establish a precedent allowing a plaintiff to reduce the monetary value of his claim once the government raises a well-supported defense of laches. The effect of such a precedent would be to penalize those plaintiffs who seek to recover the full value of their claims, while allowing other stale claims to be adjudicated on the merits. Prospective plaintiffs should not be permitted to circumvent the laches doctrine through the use of this subterfuge.

Although plaintiff cites *Chappelle v. United States*, 168 Ct.Cl. 362 (1964), as support for his motion, the case is distinguishable. In *Chappelle*, it appears that plaintiff limited his claim for back pay to only the amount to which he was entitled. 168 Ct.Cl. at 366. Thus, the amount of his claim was fixed when his complaint was filed. *Id.* at 367; *see also Simon v. United States*, 113 Ct.Cl. 182, 200 (1949). In the instant case, plaintiff seeks an *arbitrary* limitation of his claim for back pay solely to avoid application of the laches doctrine. To find that plaintiff is entitled to this reduced amount of back pay, however, we must necessarily determine his entitlement

**6.** Transcript of Oral Argument of September 19, 1984, at 19.

to the entire amount of back pay accruing since his discharge. Thus, unlike *Chappelle,* the amount of plaintiff's claim is not legally fixed. Laches applies to the full value of plaintiff's claim as initially asserted, not to an arbitrarily reduced portion of that claim. As the Court of Claims noted:

> [W]e do not think a long period of laches is avoided by performance of surgery upon the claim, reducing the back pay award to a shorter period than the plaintiff asserts. [*Cason v. United States,* 198 Ct.Cl. 650, 658, 461 F.2d 784, 788 (1972), *vacated,* 200 Ct.Cl. 424, 471 F.2d 1225 (1973).]

██ Even if this court were to allow plaintiff to amend his complaint and limit his claim for back pay, prejudice to defendant would still exist. If plaintiff prevails, he would be entitled to correction of his records and, as a result, defendant would be required to pay plaintiff a substantially increased amount of retirement benefits. In light of the length and nature of plaintiff's delay, defendant need show only minimal prejudice to invoke the laches doctrine. *See Deering,* 223 Ct.Cl. at 350, 620 F.2d at 246. Because the payment of a significant amount of retirement pay is analogous to the payment of a significant amount of back pay, defendant could readily establish the requisite prejudice and laches would apply. *See Foster,* 733 F.2d at 90. Therefore, because it would not be in the interest of justice to allow plaintiff to amend his complaint, plaintiff's oral motion for leave to amend is denied.

Consequently, plaintiff's claim is barred by laches. Were this court to hold otherwise, prospective plaintiffs could wait indefinitely before filing suit due to their alleged ignorance of readily available facts regarding their claims. The attendant multiplication of damages would clearly prejudice the government. Such a ruling would effectively undermine the intent of the doctrine of laches, i.e., to avoid the inequity inherent in the enforcement of stale claims. *See Brundage,* 205 Ct.Cl. at 505–506, 504 F.2d at 1383–1384.

Because of the disposition of the question of laches, the court need not address the issue of whether the ROSB complied with the mandate of 10 U.S.C. § 266(a).

## CONCLUSION

Upon reconsideration and for the reasons stated above, defendant's motion for summary judgment is GRANTED, plaintiff's cross-motion is DENIED and plaintiff's complaint is to be DISMISSED.

IT IS SO ORDERED.